# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:15 CR 314 CEJ / DDN |
| | ) | |
| ROBERT O. DINKINS, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER AND RECOMMENDATION

This action is before the court on the pretrial motions of the parties, which were referred to the undersigned Magistrate Judge under 28 U.S.C. § 636(b). Pending are the motions of the United States for a determination by the court of the admissibility of any arguably suppressible evidence (Doc. 13), and of defendant Robert O. Dinkins to suppress evidence (Docs. 12, 22) and to dismiss the indictment (doc. 30). An evidentiary hearing was held on October 23, 2015.

From the evidence adduced during the evidentiary suppression hearing, and considering the memoranda of the parties, the undersigned makes the following findings of fact and conclusions of law:

## FACTS

1.  On June 4, 2015, around 2:00 p.m., St. Louis Metropolitan Police Detective Erin Becker was on patrol in an unmarked police vehicle with two other officers, Dets. Wyms and Offt. The three officers were members of the Special Operations Group. At that time, while driving on Lillian in the Walnut Park area of St. Louis, they approached the intersection of Lillian with Davidson. They saw, in the opposite lane coming toward them, a small, moped-type motor scooter, being ridden by a man later identified as defendant Robert O. Dinkins, go through the stop sign at that intersection without slowing or stopping. After seeing the stop sign violation, the officers made a u-turn to

stop the scooter for the sign violation.  The officers intended to issue the operator a traffic citation.  The scooter continued on Lillian for a block when it turned onto Beacon.

    2.    In the 5000 block of Beacon the officers activated their emergency lights and siren to get the scooter to stop.  Dinkins turned his head, looked at the officers, and, without attempting to stop, continued driving away from them.  The officers considered this a form of resisting arrest. With the officers behind him, Dinkins drove the scooter down Beacon to Thekla.  He turned onto Thekla and then into the nearest alley.  At this point, Dinkins lost control of the scooter.  It fell to the ground with him under it.

    3.    When the officers came up to him, Dinkins was face down under the scooter. The scooter was damaged and was leaking gasoline.  The officers told Dinkins they were police and lifted him out from under the scooter.  As they lifted him, a black, semi-automatic handgun fell out from under Dinkins.   Det. Becker saw the handgun fall and seized it.  Dinkins had been unable to help himself out from under the scooter, because, before the traffic incident, he had lost the use of his legs.  After being taken from under the scooter, Dinkins struggled with the officers until they handcuffed him and placed him in a sitting position on the ground.

    4.    Det. Wyms then read Dinkins his <u>Miranda</u> warnings, statements of his constitutional rights to remain silent and to counsel.  When asked if he understood these rights, Dinkins said he knew these rights and understood them.  Then and there, in response to questioning, Dinkins told the officers that they were in a bad neighborhood, where he did not want to be caught without a gun.  He said he was allowed to carry a firearm, because he owned a business and had a commercial license which had been issued by the Missouri Secretary of State.  He told the officers also that a friend had gotten him the gun, which he believed he could lawfully carry for business purposes.

    5.    The officers then carried Dinkins, who was unable to walk due to the preexisting condition, to their patrol car and sat him in it.  Then, Det. Becker pushed the scooter to the home of Dinkins's mother a couple of blocks away.  The other officers followed her in the police car with Dinkins.  After giving the scooter to Dinkins's mother, she joined the others in the police car which headed to the St. Louis City Justice Center.

6. En route to the Justice Center, Dinkins asked the officers if they knew him. Det. Becker told him she did not know who he was. He said he was famous, because he had done time for a bunch of robberies in Illinois and in St. Louis County, for which he had just gotten out of jail. After arriving at the Justice Center, he told the officers he had lost the use of his legs due to poor medical treatment in jail. Dinkins refused the officers' request that he make a written statement.

7. When Dinkins made his statements, he appeared to the officers to be coherent and to understand their questions.

## DISCUSSION

### Motion to suppress firearm and statements

Defendant Dinkins has moved to suppress the firearm and his statements. He argues the officers had no probable cause to arrest him and, because the arrest was unlawful, the seizure of the firearm and his post-arrest statements should be suppressed as the fruits of the unlawful arrest. Brown v. Illinois, 422 U.S. 590, 602-03 (1975); Wong Sun v. United States, 371 U.S. 471, 486 (1963).

Defendant was lawfully arrested without a warrant. When the officers personally saw Dinkins violate the traffic stop sign, they had probable cause to stop him for the violation. Navarette v. California, 134 S. Ct. 1683, 1687 (2014); United States v. Linkous, 285 F.3d 716, 719 (8th Cir. 2002). Initially, the officers considered issuing a traffic citation. When he failed to stop at their emergency lights and siren, and reasonably appeared to flee them, the officers had a particularized and objective basis for suspecting Dinkins was engaged in criminal activity more serious than the traffic sign violation. Illinois v. Wardlow, 528 U.S. 119, 123-24 (2000). And indeed they considered that he was resisting arrest, which was another crime.

Whether or not the officers' acts of pulling the scooter off Dinkins and pulling him away from it was an arrest or seizure under the Fourth Amendment, or were actions to aid him after the crash, or both, by the time the officers handcuffed him, they had seen the firearm fall from his person and seized it. The seizure of the firearm under these

circumstances was reasonable, to protect the officers and the public. Terry v. Ohio, 392 U.S. 1, 30-31 (1968).

Thereafter, knowing Dinkins had possessed the firearm, the officers lawfully expanded their investigation beyond the stop sign violation. Linkous, 285 F.3d at 720. And they could lawfully detain him for further investigation. Navarette, 134 S. Ct. at 1687.

During the officers' further investigation, they lawfully acquired defendant's statements. The admissibility of his post-arrest statements, which resulted from police interrogation, depends upon whether Dinkins had been advised of his rights as prescribed by Miranda v. Arizona, 384 U.S. 436 (1966); whether he knowingly and voluntarily waived his Miranda rights, North Carolina v. Butler, 441 U.S. 369, 373, 375-76 (1979); and whether the statements were voluntary. Statements are voluntary, if they are not the result of officer overreaching, such as coercion, deception, or intimidation. Colorado v. Connelly, 479 U.S. 157, 169-70 (1986); Moran v. Burbine, 475 U.S. 412, 421 (1986); United State v. Jordan, 150 F.3d 895, 898 (8th Cir. 1998); United States v. Goudreau, 854 F.2d 1097, 1099 (8th Cir. 1988).

In this case, Dinkins was orally advised of his constitutional rights to remain silent and to counsel. He understood them and proceeded to answer the officer's questions, thereby waiving his rights. North Carolina, 441 U.S. at 375 (implicit waiver of rights is constitutionally sufficient). His statements were given voluntarily, because the officers did nothing to coerce him into speaking with them. In fact, Dinkins's initial statement about his criminal record was his volunteered question to them about whether they knew of him because of his robberies.

For these reasons, the motion to suppress the firearm and his post-arrest statements should be denied.

**Pro se motion to dismiss**

Defendant Dinkins was allowed by the undersigned to file pro se a written motion to dismiss (Doc. 30), which he supported with materials filed under seal (Doc. 32). The motion is lengthy, handwritten, and not entirely clear. However, after a careful reading of it one can discern several arguments why he lawfully possessed the firearm on June 4, 2015, including the following:

1. He was authorized by the Constitution to possess the firearm for self-protection from future violence in the Walnut Park area which is a high crime area. He lived in this area as part of his Missouri state parole home plan.

2. He was arrested without probable cause, because his use of the small motor scooter did not involve the criminal use of the firearm.

3. He has been involved in organizing programs to reduce gun violence.

4. The officers improperly used an unmarked police vehicle for their activities.

5. The officers' report inaccurately stated that attempted to run from them when he was physically unable to do so.

6. He is an unarmed guard who was acting within the scope of his being the owner and office manager of the New East Afrika Allegiance Council.

7. He did not possess the firearm knowing such was unlawful.

8. He did not violate state law by possessing the firearm.

Defendant Dinkins's pro se motion to dismiss should be denied. The one count indictment of him for the unlawful possession of a firearm on June 4, 2015 in violation of 18 U.S.C. § 922(g)(1) is legally sufficient on its face. To be legally sufficient on its face, the indictment must contain all the essential elements of the offense charged; it must fairly provide defendant with information regarding the charge against which he must defend; and it must allege sufficient information to allow him to plead a conviction or an acquittal as a bar to a future prosecution for the same offense. U.S. Const. amends. V and VI; Fed. R. Crim. P. 7(c)(1); Hamling v. United States, 418 U.S. 87, 117 (1974); United States v. White, 241 F.3d 1015, 1021 (8th Cir. 2001).

The essential elements of the § 922(g)(1) violation are (1) defendant was previously convicted of a felony offense; (2) after being so convicted he possessed a firearm; and (3) the firearm was in or affecting interstate commerce. United States v. Garcia-Hernandez, 2015 WL 6081044, at *1 (8th Cir. October 16, 2015). The indictment against Dinkins alleges all three essential elements, plus the date of the offense (June 4, 2015), its location (City of St. Louis), and the nature of his prior felony convictions (first degree robbery and armed criminal action). This indictment is legally sufficient on its face.

Because the indictment is legally sufficient on its face, the court should not further investigate to determine whether it is supported by legally obtained and sufficient evidence. See Costello v. United States, 350 U.S. 359, 363-64 (1956); United States v. Nelson, 165 F.3d 1180, 1182 (8th Cir. 1999).

None of defendant's arguments persuade that the indictment should be dismissed before trial. His argument that he possessed the firearm for self-defense is without merit. The elements of this defense have been stated to include, among others, that he was under "an unlawful and present, imminent, and impending [threat] of such a nature as to induce a well-grounded apprehension of death or serious bodily injury." United States v. Blankenship, 67 F.3d 673, 677 (8th Cir. 1995). This element of the defense was not demonstrated in the pretrial evidentiary hearing and, in any event, would be a trial matter, not a basis for pretrial relief on a motion to dismiss.

Defendant argues that he was authorized to possess the firearm by Missouri state law and the business license issued by the Missouri Secretary of State. The undersigned disagrees. Article VI of the Constitution of the United States provides in relevant part:

> This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, anything in the Constitution or Laws of any State to the Contrary notwithstanding.

U.S. Const. Art. VI. Cf., United States v. Achter, 52 F.3d 753, 755 (8th Cir. 1995) (no federal officer, much less a state officer, has the authority to authorize a person to violate

the law); Dees v. United States, 789 F.2d 1521 (11th Cir. 1986) (obtaining a pistol license and a deputy sheriff's card are defenses to the federal firearms charge).

Defendant's argument that he did not use the firearm unlawfully might be considered an invocation of the innocent possession defense. That defense, again, is not a basis for dismissing the indictment before trial. Rather, it is a defense on which he bears the burden of proof at trial. United States v. Wright, 682 F.3d 1088, 1090 (8th Cir. 2012).

His argumen6 that he is involved in praiseworthy civic activities, such as the reduction of guns in society, is irrelevant to whether he violated § 922(g)(1). Such information may be relevant to what punishment he should receive if he is convicted. Dees, 789 F.2d 1521 (no defense that defendant in an undercover capacity engaged in purchasing stolen firearms).

Even if it was relevant to a motion to dismiss, which it is not, he has not demonstrated that it was unlawful for the police officers to perform their duties in an unmarked police car.

Finally, the rest of defendant's arguments involve whether the government can prove his guilt beyond a reasonable doubt at trial. They do not indicate that the indictment should be dismissed before trial.

## ORDER AND RECOMMENDATION

For the reasons set forth above,

**IT IS HEREBY ORDERED** that the motion of the United States for a determination by the court of the admissibility of arguably suppressible evidence (Doc. 13) is denied as moot.

**IT IS HEREBY RECOMMENDED** that the motions of defendant Robert O. Dinkins to suppress evidence and statements (Docs. 12, 22) be denied.

**IT IS FURTHER RECOMMENDED** that the pro se motion of defendant Dinkins to dismiss (Doc. 30) be denied.

The parties have until close of business on November 23, 2015, to file written objections to this Order and Recommendation. The failure to file timely written objections may waive the right to appeal issues of fact.

                                               **/S/   David D. Noce**
                                       **UNITED STATES MAGISTRATE JUDGE**

Signed and filed on November 6, 2015.